**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

ANTONIA C.,[1]
    Plaintiff,

        v.                                         Civil No. 3:20-cv-00987 (MHL)

KILOLO KIJAKAZI,[2]
Acting Commissioner of Social Security,
    Defendant.

## REPORT AND RECOMMENDATION

This is an action seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for a period of disability, and disability insurance benefits under the Social Security Act ("Act"). (R. at 140.) Plaintiff was forty years old at the time of her alleged onset date of disability and previously worked as a call center insurance agent. (R. at 70, 154.) Plaintiff alleges she is unable to work because of pain caused by a ruptured lumbar disc and lower back pain. (R. at 153.)

On February 19, 2020, an Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (R. at 13.) This matter comes before the Court for a Report and

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Acting Commissioner Kilolo Kijakazi should be substituted for former Commissioner Andrew M. Saul as the defendant in this matter.

1

Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross motions for summary judgment, rendering the matter ripe for review.[3]

Plaintiff now seeks review of the ALJ's decision. (Pl.'s Mem. Supp. Mot. Summ. J., ECF No. 18 ("Pl.'s Mem.").) For the reasons set forth below, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 17) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 19) be GRANTED and the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits and/or period of disability on June 25, 2018, alleging disability beginning November 14, 2017. (R. at 140-41.) The Social Security Administration ("SSA") denied Plaintiff's claim on September 27, 2018 and again upon reconsideration on May 17, 2019. (R. at 99, 112.) Plaintiff requested a hearing before an ALJ, and a hearing was held on January 8, 2020. (R. at 117-18, 33-69.) On February 19, 2020, the ALJ issued a written opinion, holding that Plaintiff was not disabled under the Act. (R. at 16-27.) Plaintiff requested review of the ALJ's decision. On November 3, 2020, the SSA Appeals Council denied Plaintiff's request, rendering the ALJ's decision as the final decision of the Commissioner. (R. at 1-7.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

---

[3] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and financial account numbers from this Report and Recommendation, and will further restrict its discussion of Plaintiff's medical information only to the extent necessary to properly analyze the case.

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)).

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)).

In considering the decision of the Commissioner based on the record as a whole, the court must take into account "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 476. If substantial evidence in the record does

not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

SSA regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 416.920(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. § 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. § 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. § 416.920(a)(4)(iii). Between steps three and four, the ALJ must determine the claimant's residual functional capacity, accounting for the most the claimant can do despite her physical and mental limitations. § 416.925(a).

At step four, the ALJ assesses whether the claimant can perform her past work given her residual functional capacity. § 416.920(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, such that she must prove that her limitations preclude her from past relevant work. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock*, 2012 U.S. App. LEXIS 128, at *3 (citation omitted). If such work can be performed, then benefits will not be awarded, and the analysis ends at step four. §§ 416.920(e), 404.1520(e). However, if the claimant cannot perform her past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant is capable of performing other work that is available in the national economy. § 416.920(a)(4)(v).

### III. THE ALJ'S DECISION

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 18-27.) *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 14, 2017, her alleged onset date. (R. at 18.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: "discogenic and degenerative disorders of back (20 CFR 404.1520(c))." (R. at 18.) At step three, the ALJ determined that none of these impairments, individually or in combination, met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 21.)

The ALJ then determined Plaintiff's residual functional capacity. (R. at 21.) Based on the evidence in the record, the ALJ determined that Plaintiff retained the ability to perform light work with the following restrictions:

> [S]tand and/or walk for a total of 4-hours in an 8-hour workday; occasionally push/pull with the left lower extremity; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. She must avoid all exposure to hazards, such as unprotected heights or moving mechanical parts; she can tolerate no more than occasional exposure to vibration.

(R. at 21.)

The ALJ explained that she determined Plaintiff's residual functional capacity after considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," including the medical opinions and prior medical findings, in accordance with the regulations. (R. at 21.) Based on her residual functional capacity findings, the ALJ concluded at step four that Plaintiff was capable of performing past relevant work as an insurance agent as it is actually and generally performed. (R.

at 25-26.) The ALJ explained that "[t]his work does not require the performance of work-related activities precluded by the claimant's residual functional capacity." (R. at 25.)

Although not required because the ALJ determined Plaintiff is capable of performing past relevant work, the ALJ issued alternative findings at step five. The ALJ also found that there are other jobs that exist in significant numbers in the national economy that Plaintiff can likewise perform. (R. at 26.) The ALJ considered the testimony of a vocational expert, who opined that Plaintiff could perform the requirements of occupations such as mail clerk, marker, and electronics worker. (R. at 26.) Therefore, the ALJ determined that Plaintiff is not disabled under the Act. (R. at 27.)

## IV. ANALYSIS

Plaintiff argues that substantial evidence does not support the ALJ's findings, nor did the ALJ apply the correct legal standard when evaluating Plaintiff's subjective complaints. (Pl.'s Mem. at 8.) Plaintiff also contends that the ALJ was biased against disability claimants due to her overall application approval ratings and argues that this warrants remand to a different ALJ or reversal for payment of benefits. (Pl.'s Mem. at 19.)

Defendant responds that the ALJ applied the correct legal standard in evaluating Plaintiff's subjective complaints, substantial evidence supports the ALJ's decision, and the ALJ's overall disability application approval ratings fail to rebut the presumption that the ALJ is unbiased. (Def.'s Mot. Summ. J. at 15, 22, 23-24 (ECF No. 19) ("Def.'s Mot.").) For the reasons that follow, this Court finds that: (1) the ALJ applied the correct legal standard and did not err in her credibility

findings; (2) substantial evidence supports the ALJ's residual functional capacity assessment; and (3) Plaintiff has failed to rebut the presumption that the ALJ is unbiased.

## A. The ALJ Applied the Correct Legal Standards When Evaluating Plaintiff's Subjective Complaints.

Plaintiff first argues that the ALJ erred by employing an "overly burdensome standard to evaluate [Plaintiff's] claim," namely, by requiring objective evidence to support Plaintiff's descriptions of the limiting effects of her pain. (Pl.'s Mem. at 13.) She also asserts that substantial evidence does not support the ALJ's credibility findings.

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(e)-(f), 404.1545(a)(1). The residual functional capacity must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on a claimant's consistent complaints. As of March 28, 2016, ALJs must follow a revised two-step analysis in reviewing a claimant's subjective complaints. 20 C.F.R. § 404.1529(a); SSR 16-3p, 2016 SSR LEXIS 4, 2016 WL 1119029 (Mar. 16, 2016); *see also* SSR 16-3p, 2016 SSR LEXIS 4, 2017 WL 5180304 (Oct. 25, 2017) (correcting terminology relating to applicable date); SSR 16-3p, 2016 SSR LEXIS 4, 2016 WL 1237954 (Mar. 24, 2016) (correcting effective date to March 28, 2016). The first step requires the ALJ to determine whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce a claimant's pain or other related symptoms. SSR 16-3p, 2016 SSR LEXIS 4, 2016 WL 1119029, at *3. If the underlying impairment reasonably could be expected to produce a claimant's pain or other symptoms, the second part of the analysis requires the ALJ to evaluate a claimant's "symptoms such as pain and determine the extent to which [the claimant's] symptoms limit his or her ability to perform work-related activities." 2016 SSR LEXIS 4, [WL] at *4.

7

The ALJ's step-two evaluation must first consider the consistency between a claimant's statements and the objective medical evidence. 2016 SSR LEXIS 4, [WL] at *5. Unless the ALJ can determine that a claimant qualifies as disabled based solely on objective medical evidence, the ALJ must also consider other sources of evidence to determine consistency, including "statements from the [claimant], medical sources, and any other sources that might have information about the [claimant's] symptoms." 2016 SSR LEXIS 4, [WL] at *5-7. Based on the degree of consistency between a claimant's statements and the evidence of record, the ALJ should find either a higher or lower likelihood that the claimant can perform work-related activities. 2016 SSR LEXIS 4, [WL] at *8.

Furthermore, it is well established that Plaintiff's subjective allegations of pain are not, alone, conclusive evidence that she qualifies as disabled. *Mickles v. Shalala*, 29 F.3d 918, 919 (4th Cir. 1994). The Fourth Circuit has determined that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Craig*, 76 F.3d at 591.

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (R. at 22.) Specifically, the ALJ pointed to the following: (1) inconsistencies between Plaintiff's admitted ability to perform tasks and her subjective complaints; (2) inconsistencies between Plaintiff's physical examinations and objective evidence and Plaintiff's subjective complaints of pain; and (3) inconsistencies between Plaintiff's treatment plan and her subjective complaints of pain. (R. at

24.) Upon review of the ALJ's decision and the record, the Court finds that the ALJ properly considered the consistency between the evidence of record and Plaintiff's subjective complaints, including the extent to which Plaintiff could perform her activities of daily living. Moreover, substantial evidence supports the ALJ's credibility assessment.

  1. *The ALJ Properly Considered the Extent to Which Plaintiff Performed Her Activities of Daily Living.*

First, the ALJ sufficiently addressed the inconsistencies between Plaintiff's subjective complaints and her daily activities. In addressing daily activities, the ALJ must consider both the types of activities that a claimant can perform and the extent to which a claimant can perform them. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018). Further, the ALJ must "*both* identify evidence that supports his conclusion *and* build an accurate and logical bridge from [that] evidence to his conclusion." *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (emphasis and alteration in original) (internal quotation marks omitted). Otherwise the court is "left to guess" how the ALJ arrived at her conclusion and cannot meaningfully review her determinations. *Mascio*, 780 F.3d at 637. The ALJ satisfied both requirements and built a logical bridge from the evidence to her conclusion. (R. at 19-20.)

Indeed, the ALJ found that Plaintiff could drive, grocery shop, perform household chores, care for her personal hygiene and for her children, prepare meals with her children's assistance, while also noting the extent to which Plaintiff could perform these activities. (R. at 19-20.) For example, the ALJ stated that Plaintiff could shop in stores, but for no longer than thirty minutes due to symptoms of back pain. (R. at 19-20.) The ALJ also acknowledged that Plaintiff attended her children's sporting events, although she watched from the car, and enjoyed spending time with her family. (R. at 19.) The ALJ pointed out that Plaintiff's responses to application documents

9

"indicated that she was generally independent with personal care activities, but her husband and children helped wash her feet and put on her shoes." (R. at 20.)

The ALJ did not simply consider the types of activities that Plaintiff could perform, but also the extent to which she could perform them. The Court finds no error in the ALJ's characterization of Plaintiff's subjective complaints within the context of Plaintiff's activities of daily living. Indeed, for each activity of daily living identified by the ALJ, the ALJ appropriately qualified her analysis with limitations on those activities, providing a legally sufficient assessment of Plaintiff's subjective complaints.

Moreover, substantial evidence in the record supports the ALJ's findings. During Plaintiff's testimony to the ALJ, Plaintiff affirmed that she could make dinner and do the laundry, provided that her children help her. (R. at 50.) Plaintiff stated that she could clean the living room and needs assistance with her self-care when she showers (R. at 50.) The ALJ accounted for these limitations to Plaintiff's activities of daily living in her assessment of Plaintiff's subjective complaints. Accordingly, the ALJ did not err.

2. *The ALJ Properly Considered Plaintiff's Objective Medical Records in Assessing Her Subjective Complaints.*

As a second part of the ALJ's credibility assessment, the ALJ found that the objective medical evidence and Plaintiff's physical examinations did not support Plaintiff's subjective complaints of pain. (R. at 22-25.) The record shows that Plaintiff underwent surgery on November 14, 2017 to alleviate lower back pain and radiating left leg pain produced by an L4-5 disc extrusion extending to the L5-S1 level. (R. at 477.) In the months following her surgery, she continued to experience severe back pain radiating to the back of her left thigh, positive straight leg raising[4],

---

[4] The straight leg raise test, also called the Lasẽgue test, is a fundamental maneuver during the physical examination of a patient with lower back pain," which "aims to assess for lumbosacral

10

and positive Spurling test[5] results, despite physical therapy and pain management. (R. at 315, 318, 391, 394, 457-58, 460, 463.) Imaging of Plaintiff's lumbar spine in January 2018 revealed recurrent or residual L4-5 left paracentral disc herniation with caudal extrusion, shallow right far lateral disc herniation L3-4, and dorsal postoperative fluid collection. (R. at 604.) X-rays revealed placement of a solitary vertically oriented rod with associated pedicular screws. (R. at 444.) Subsequently, Plaintiff underwent an L4-5 posterolateral lumbar fusion with lumbar instrumentation on March 26, 2018. (R. at 475-76.) She reported doing "much better" on follow-up in May 2018, although she continued to report pain in her lower back. (R. at 452.) On May 3, 2018, an x-ray indicated some lucency around the left L4 screw, but no acute osseous abnormality. (R. at 603.) She complained of lower back pain during her medical appointments in June and July 2018. (R. at 303, 309, 379, 382, 448-450.) An MRI on June 29, 2018 revealed postsurgical changes L4-5 with associated effusion, although with "[i]Improved overall appearance compared to the prior study with improved canal diameter." (R. at 598.) A CT scan showed no evidence of osseous

---

nerve root irritation." Gaston O. Camino Willhuber & Nicolas S. Piuzzi, *Straight Leg Raise Test*, NAT'L CENTER FOR BIOTECHNOLOGY INFO., U.S. NAT'L LIBR. OF MED. (last updated July 31, 2021), https://www.ncbi.nlm.nih.gov/books/NBK539717. In layman's terms, the straight leg raising test evaluates whether the patient suffers from sciatic pain radiating from the buttocks to the leg. *Id*. The test is generally performed in the supine position with the examiner raising the patient's fully extended leg from the hip. *Id*. It is considered positive when the patient experiences pain along the lower limb in the same distribution of the lower radicular nerve roots (usually L5 or S1) or when pain is elicited by lower limb flexion at an angle lower than 45 degrees. *Id*. The test can also be performed in the seated position with the leg flexed 90 degrees and extended by the examiner until pain in elicited. Anthony J. Busti, *Straight Leg Raising Test*, EVIDENCE-BASED MED. CONSULT (Sept. 2016), https://www.ebmconsult.com/articles/straight-leg-raising-test.

[5] A positive Spurling sign is indicative of cervical radiculopathy. During a Spurling Test, the patient laterally bends the neck to each side while maintaining a posture of cervical extension. With a positive Spurling Test, the suspected diagnosis is a cervical nerve root compression commonly related to intervertebral disc pathology (e.g., herniation). *See* Stephen J. Jones & John-Mark M. Miller, *Spurling Test*, NAT'L CENTER FOR BIOTECHNOLOGY INFO., U.S. NAT'L LIBR. OF MED. (last updated Aug. 11, 2021), https://www.ncbi.nlm.nih.gov/books/NBK493152/.

bridging across the disc space or visualized obvious herniation, central canal stenosis, or foraminal narrowing at the lumbar levels. (R. at 601.)

On September 20, 2018, Plaintiff began treating with Virginia Interventional Spine Associates for pain management. (R. at 574.) The ALJ noted that she displayed antalgic gait, but negative straight leg raising bilaterally. (R. at 23, citing to R. at 575.) She continued to display antalgic gait in September and November 2018, as well as in January 2019, and September 2019. (R. at 540, 583, 586, 657.) On January 7, 2019, an MRI of Plaintiff's thoracic spine revealed no significant degenerative changes, central canal stenosis, or foraminal narrowing. (R. at 608.) However, Plaintiff's provider incidentally noted degenerative disc disease at C5-6 and C6-7 "with at least mild central canal stenosis noted at C5-C6." (R. at 608.) During a functional capacity evaluation in April 2019, Plaintiff displayed:

> [S]hortened stride length on the left with decreased weight shift to the left; she exhibited decreased weight bearing on the left lower extremity; there was moderate increased tightness in her lumbar and thoracic spine as well as moderate tightness in her hamstrings; range of motion was decreased in her lumbar spine, left shoulder, and hips; she was hyperreflexive on the left patellar tendon and Achilles tendon jerk.

(R. at 23, quoting R. at 638-41.)

The ALJ observed that Plaintiff's providers did not recommend that she use a spinal cord stimulator and apparently treated her pain with over-the-counter medication and a heating pad. (R. at 24.) Moreover, the ALJ cited to records demonstrating that Plaintiff walked without any assistive devices and did not appear to have swelling, tenderness, or erythema in her lower extremities, which undermined Plaintiff's subjective complaints. (R. at 23-24.) Notwithstanding, the ALJ accounted for the objective evidence appropriately when addressing Plaintiff's limitations and assessing her residual functional capacity. (R. at 21.) The Court finds that the ALJ properly

considered the objective medical evidence in discrediting Plaintiff's subjective complaints. Moreover, substantial evidence supports the ALJ's assessment of Plaintiff's medical records. Together, these records provide substantial support for the ALJ's assessment that the objective medical records proved inconsistent with Plaintiff's subjective complaints of pain. Accordingly, the ALJ did not err.

### 3. The ALJ Properly Considered Plaintiff's Conservative Course of Treatment in Discrediting Plaintiff's Subjective Complaints.

At another part of the ALJ's creditability assessment, the ALJ assessed the inconsistencies between Plaintiff's treatment regimen following her surgeries and her subjective complaints. (R. at 24.) Indeed, if a claimant requires only conservative treatment, an ALJ can reasonably hold that the alleged disability lacks the seriousness that the claimant alleges. *Dunn*, 607 Fed. Appx. at 274. While the ALJ acknowledged that Plaintiff "did undergo surgery for treatment of her back pain symptoms, [] she testified that further surgery was not approved by her husband's insurance company and a spinal cord stimulator was not recommended based on further workup; she treats her pain symptoms with over-the-counter medication and a heating pad." (R. at 24.)

The record shows that Plaintiff underwent two surgeries for treatment of her back-pain symptoms, and that physical therapy following her surgeries was minimally effective. (R. at 475, 477, 539.) She continued to treat her symptoms with both prescription and over-the-counter pain relief medication. (R. at 574, 576, 584.) She also received injections but found minimal relief. (R. at 577, 585.)

In July 2019, Plaintiff's surgeon examined imaging of Plaintiff's back and did not assess her as a surgical candidate. (R. at 664.) She received further sacroiliac joint injections in August 2019, which she reported a ten percent relief in her pain, lasting for about a week. (R. at 656.) She continued to treat her pain through stretching, hot and cold treatment, and medication. (R. at 656.)

13

Plaintiff's doctor recommended that she receive another sacroiliac joint injection in late October 2019 and to continue conservative measures at home, including a home exercise program, heating pad or ice as needed, and anti-inflammatory medication. (R. at 658.) Because the record demonstrates that Plaintiff continued to treat conservatively following her surgeries consisting mostly of home remedies, pain medications, and steroid injections, the ALJ properly relied on that treatment to discredit Plaintiff's subjective complaints.

Therefore, the ALJ did not commit legal error by "effectively requiring [Plaintiff to produce] objective evidence supporting her descriptions of her pain[]. . . ." (Pl.'s Mem. at 13.) A review of the ALJ's decision and the record demonstrates that the ALJ properly considered Plaintiff's daily activities and the extent to which she could perform them, the objective medical evidence in the record, and the evidence of Plaintiff's manner of treatment in making her creditability determination. Moreover, the Court finds that the ALJ properly considered Plaintiff's relevant functions in crafting Plaintiff's residual functional capacity and provided a narrative and substantially supported explanation that created a logical bridge between the evidence of record and the residual functional capacity findings. Accordingly, the ALJ did not err.

**B. The Record Does Not Support Plaintiff's Argument that the ALJ's Decision was the Result of Bias Against Disability Claimants.**

Plaintiff finally argues that the ALJ's decision must be reversed, or in the alternative, remanded, because the ALJ is biased "against disability claimants in general." (Pl.'s Mem. at 19-20.) In support, Plaintiff contends that the ALJ's approval ratings record, in addition to her failure to "offer any cogent explanation in reasonable terms as to why [Plaintiff] . . . should be disbelieved," establishes the "indisputable unfairness of the adjudicator . . . ." (Pl.'s Mem. at 21.) Defendant responds that Plaintiff's evidence of alleged bias is unreliable and attenuated, and her

argument was previously evaluated by the SSA Appeals Council, which found no abuse of discretion. (Def.'s Mem. at 25-26.)

The Fourth Circuit has not specifically set out the standard for establishing bias of an ALJ presiding over a Social Security hearing. The Supreme Court has addressed the standard for establishing bias against "hearing officers" in the related context of Medicare determinations under Title XVIII of the Act. *See Schweiker v. McClure*, 456 U.S. 188, 189, 102 S. Ct. 1665, 72 L. Ed. 2d 1 (1982). There, the Court noted the hearing officers served "in a quasi-judicial capacity, similar in many respects to that of administrative law judges." *Schweiker*, 456 U.S. at 195. The Court wrote that while "due process demands impartiality on the part of those who function in judicial or quasi-judicial capacities[,] . . . [the Court] must start from the presumption that the hearing officers . . . are unbiased." *Id.* (citing *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242-243 n.2, 100 S. Ct. 1610, 64 L. Ed. 2d 182 (1980); *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975); *United States v. Morgan*, 313 U.S. 409, 421, 61 S. Ct. 999, 85 L. Ed. 1429 (1941)). "This presumption can be rebutted by a showing of conflict of interest or some other specific reason for disqualification[,] . . . [b]ut the burden of establishing a disqualifying interest rests on the party making the assertion." *Schweiker*, 456 U.S. at 195.

The Fourth Circuit has observed in cases outside the Social Security context that "[t]o be disqualifying, personal bias must stem from a source other than knowledge a decision maker acquires from participating in a case." *Bowens v. North Carolina Dep't of Human Resources*, 710 F.2d 1015, 2010 (4th Cir. 1983). Thus, where a plaintiff did not make "any showing of bias stemming from sources outside the decisional process," the Court found the presumption that the administrative decisionmakers are unbiased had not been overcome. *Morris v. City of Danville, Virginia*, 744 F.2d 1041, 1044-45 (4th Cir. 1984) (holding an administrative officer did

not cease "to be an impartial decisionmaker simply by virtue of having made a conditional decision to terminate [the plaintiff] pending further developments in an administrative process [that] had not then closed"). Other District Courts in the Fourth Circuit have applied the reasoning of *Bowens* and *Morris* to Social Security cases. *See, e.g., Warren v. Colvin*, No. 4:14-cv-02517-JMC, 2015 U.S. Dist. LEXIS 128923, 2015 WL 5673118 (D.S.C. Sept. 25, 2015) (finding the plaintiff failed to meet the heavy burden of proof in establishing an ALJ's bias though an ALJ made an adverse credibility finding as to and issued an unfavorable decision to the plaintiff); *Nichols v. Colvin*, No. 1:14CV536, 2015 U.S. Dist. LEXIS 105394, 2015 WL 4656484 (M.D.N.C. Aug. 5, 2015) (finding the plaintiff failed to overcome the presumption that the ALJ was unbiased where "[a]ny 'expressions of impatient, dissatisfaction, annoyance, [or] even anger,' demonstrated by the ALJ during the evidentiary hearing were 'within the bounds of what imperfect men and women...sometimes display' and do not establish bias") (citing *Liteky v. United States*, 510 U.S. 540, 555-56, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994)); *McAuley v. Colvin*, No. 7:12-CV-311-D, 2015 U.S. Dist. LEXIS 105394, 2013 WL 7098724 (E.D.N.C. Dec. 12, 2013) (finding the ALJ's impolite, impatient, and intemperate remarks did not deprive the plaintiff of a fair hearing).

Plaintiff points only to evidence of alleged bias in the ALJ's approval rating for one hundred seventy-eight cases appearing before her between September 2019 and March 2020. (Pl.'s Mem. at 20.) During that period, Plaintiff alleges that the ALJ found thirteen fully favorable, sixteen "partially favorable," and the remaining unfavorable. (Pl.'s Mem. at 20, n.10.) A review of the archived statistical data set for the ALJ between September 28, 2019 and March 27, 2020[6]

---

[6]*Hearings and Appeals: ALJ Disposition Data FY 2020*, Soc. Sec. Admin., https://www.ssa.gov/appeals/DataSets/archive/03_FY2020/03_March_ALJ_Disposition_Data.html (last visited Mar. 23, 2022).

revealed that the ALJ presided over two hundred fifty-three total dispositions and produced one hundred seventy-eight decisions. (R. at 253.) Of these, the ALJ issued twenty-nine awards and one hundred forty-nine denials. *See id.* She found thirteen fully favorable and sixteen partially favorable. *See id.* According to Plaintiff, this "paltry allowance rate" falls below ten percent, which presumptively shows that the ALJ is "wrongfully denying claims." (Pl.'s Mem. at 20) (Pl.'s Reply to Def.'s Mot. Summ J., 10 (ECF No. 20) ("Pl.'s Reply Mem.") In support, Plaintiff contends that a statement made by SSA Deputy Chief Administrative Law Judge Christopher Dillon at a Spring 2019 national conference proves that the ALJ in the present matter denied claimants who otherwise should have been found disabled. (Pl.'s Mem. at 20.) In a June 2019 newsletter[7] published by the National Organization of Social Security Claimants Representatives[8], ALJ Dillon reportedly fielded questions regarding "the low approval ratings of ALJs" and responded "that if an ALJ is paying only 10% of cases, then, statistically speaking, that ALJ is denying claimants that are disabled." (R. at 251.) Plaintiff does not cite to any regulations or material suggesting that ALJ Dillon's remarks were formal policy statements made on behalf of the SSA, nor does she provide further context demonstrating the link between the approval ratings and ALJ bias. Nonetheless, Plaintiff avers that a "remand would serve no real purpose" because the same ALJ would preside over her claim, despite the ALJ's "unfair, documented, statistical bias." (Pl.'s Mem. at 20-21) (Pl.'s Reply Mem. at 21.)

---

[7] *What We Learned at NOSSCR's Spring Conference in Washington DC*, Soc. Sec. Forum (NOSSCR), June 2019, at 6 [hereinafter "NOSSCR June 2019 Newsletter"].
[8] According to its website, "The National Organization of Social Security Claimants' Representatives (NOSSCR) is a specialized bar association for attorneys and advocates who represent Social Security Disability Insurance and Supplemental Security Income claimants throughout the adjudicative process." Its mission is "to advocate for improvements in Social Security disability programs and to ensure that individuals with disabilities applying for Social Security Disability and SSI benefits have access to highly qualified representation and receive fair decisions." NOSSCR: About, https://nosscr.org/about (last visited Mar. 23, 2022).

The Fourth Circuit's precedent suggesting Plaintiff must point to evidence outside the decision-making process makes clear Plaintiff's allegations do not overcome the presumption that an ALJ is unbiased. Even if the Fourth Circuit cases do not apply in a Social Security context, starting from the presumption that the ALJ in this case was unbiased, the undersigned finds Plaintiff did not overcome that presumption in pointing to the ALJ's approval ratings in other cases. *See Schweiker*, 456 U.S. at 189. There is no evidence suggesting that the ALJ's personal bias against disability claimants was responsible for her decision to deny or find other claimants unfavorable, nor is there intrinsic or extrinsic evidence that the ALJ harbored any such bias against Plaintiff in the present matter which contributed to her unfavorable decision. Plaintiff did not identify any conflicts of interest that would have barred the ALJ from hearing Plaintiff's claim. *See id.* at 195. Further, none of the above data evinces that the ALJ's decision-making process was the result of any hostility or bias toward Plaintiff.

In making an adverse determination against Plaintiff, principles of administrative law necessarily required the ALJ to weigh the evidence in the record and explain how evidence favorable to Plaintiff did not justify a finding in her favor. Here, the ALJ reasoned through the facts to come to her conclusion that Plaintiff did not qualify as disabled under the Act. The ALJ's ultimate assessment of the facts and circumstances presented by Plaintiff, in addition to the ALJ's approval ratings in a number of unrelated cases, is insufficient to suggest bias undergirded her reasoning. Because Plaintiff has failed to show a conflict of interest or other reason for disqualification, she has failed to rebut the presumption that the ALJ was unbiased.

## V. CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 17) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 19) be GRANTED and that the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to United States District Judge M. Hannah Lauck and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/ MRC
Mark R. Colombell
United States Magistrate Judge

Richmond, Virginia
Date: May 9, 2022